## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDAL EUGENE PARRAN, | : | CIVIL NO. 3:14-CV-1522 |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Ronald Eugene Parran ("Parran" or "plaintiff"), at all times relevant an inmate incarcerated at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), commenced this action on August 14, 2014. (Doc. 1). The matter is proceeding *via* an amended complaint (Doc. 14) filed on November 25, 2014. Named as Defendants are the following individuals collectively referred to as the Commonwealth defendants: Tamika Byrd ("Byrd"), Joe Francis ("Francis"), Laurel Harry ("Harry"), Timothy Henry ("Henry"), Richard Hibshmen ("Hibshmen"), Brian Hoerner ("Hoerner"), John Horner ("Horner"), Adam Huber ("Huber"), Todd E. Leedom ("Leedom"), Paul Leggore ("Leggore"), Lewis ("Lewis"), Robin Lewis ("R. Lewis"), James A. Meintel ("Meintel"), Bettylou Mihal ("Mihal"), Keri Moore ("K. Moore"), Scott Moore ("S. Moore"), Stephan Noll ("Noll"), Kristen Reisinger ("Reisinger"), Edwin Shoop ("Shoop"), James Simms ("Simms"), Anthony Stern ("Stern"), David Swartz ("Swartz"), Cole Taylor ("Taylor"), Dorina Varner ("Varner"), John E. Wetzel ("Wetzel"), Scott Whalen ("Whalen"), Tracey Williams ("Williams"), and

Kathleen Zwierzyna ("Zwierzyna").[1]  Also named as a defendant is Dr. Theordoor Voorstad ("Voorstad").  Additionally named as defendants are "Gonzales" and "Little" or "Littles."  Although these defendants have not been served, Parran will be afforded time to provide the Court with additional information to effect service on these defendants.

Presently pending are the Commonwealth defendants motion (Doc. 30) to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Voorstad's motion to dismiss (Doc. 42) the amended complaint  pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, the Commonwealth defendants' motion to dismiss will be granted in part and denied in part;  Voorstad's motion to dismiss will be granted in part and denied in part and the motion for summary judgment will be deemed unopposed and granted.

## I.     Motion to Dismiss

### A.     Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489

---

[1]On January 7, 2016, an Order (Doc. 71) issued dismissing defendants Enisburg, McEwing, Snyder, Sias, Peter, Bartoe, Townsend, Brown, Johnson, Cook, Thomas, Marry, Malisa, Shannin, Teama, Mia Suko, Bencheck, Walker, and Starky, pursuant to Federal Rule of Civil Procedure 4(m).

F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. <u>Id.</u>; <u>see also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

**B.      Allegations of the Complaint**

Parran states that "[t]his is a civil rights action file[d] under 42 U.S.C. 1981, 42 U.S.C.

1983, 42 U.S.C. 1985, 42 U.S.C. 1986."  (Doc. 14, ¶ 1).  He initially alleges that "[t]he issues

outline[d] in this complaint took place from Dec. 7, 2012 to Jan. 4, 2013, 27 days, all

simultaneously right behind the other by different employees/officials/and medical officials,

which was a conspiracy (directly and indirectly) to retaliate and punish unlawfully Parran,

because of his religion/speech activities which the deprivations of constitutional rights

secured by the United States Constitution by all named Defendants named in this complaint."

(Id. at 8).

On December 7, 2012, while housed in the Special Management Unit ("SMU"), A-

Pod, Parran allegedly had a conversation with other inmates during which he revealed that he

was a "Muslim, Follower of Messenger Elijah Muhammad" and stated that every black

person is a Muslim and that "we were rob [sic] of everything by white people, our culture,

religion, etc.  They hung us from trees, set us on fire, and that white people don't care for

human life and that they all are devils."  (Id. at 9- 10).  He alleges that defendant Mihal,

Byrd, and Little overheard the statements and "[e]ven though Parran was not talking to them

(Mihul [sic], Little, or Byrd) or about them they (Mihul, Littles and Byrd) conspire amongst

themselves/each other and with Taylor and Houser and other SMU officers to deprive Parran

of his [First, Fourth, Fifth, Eighth and Fourteenth Amendment] constitutional rights which

lead [sic] to the incidents/violations outline[d] in this complaint."  (Id. at 11-13, 61-65).  Byrd

allegedly returned to A-pod, commented that "All Muslims are going to burn in hell," and

slammed the food wicket on Parran's hand.  (Id. at 14).  He alleges that Byrd's conduct

violated his First and Eighth Amendment rights and that defendants Mihal, Little and Taylor

conspired to conceal Byrd's misconduct in that they failed to report Parran's allegation of

Byrd's abuse.  (Id. at 15-18).  He alleges that defendant Huber retaliated against him by

destroying religious texts because of his "color, religion, or speech."  (Id. at 33).  He also

alleges that Mihal, Little and Taylor violated his Equal Protection rights when they made

derogatory statements about his religion and that Byrd retaliated against him "because of his

color/religion/speech" in filing a false misconduct report for refusing to obey an order and

using abusive language against him.  (Id. at 19, 21).

With respect to the false report, he contends that the disciplinary hearing officer

defendant Reisinger conspired with Sergeant Thomas to deny him Equal Protection of the

laws.  (Id. at 24).  He further avers that Reisinger violated his Fifth and Fourteenth

Amendment rights when she found him guilty of the charged conduct.  (Id.)

Parran alleges that between the dates of December 10, 2012, and December 19, 2012,

defendant Hibshmen, Huber, Little, Mihal, Taylor, Stern, and Swartz, conspired to deprive

him of  "sheets, blankets, toilet paper, food, towels, etc." for nine days because of his "color,

Religion, or speech."  (Id. at 26).  Further, from December 12, 2012, through December 16,

2012, defendants Gonzales, Hibshmen, Lewis, Mihal, Swartz, and Taylor retaliated against

him because of his "color, Religion, or speech" by using food as punishment and starving

him.  (Id. at 28).

He alleges that defendants Whalen, Zwierzyna, and Horner, members of the Program

Review Committee, conspired to cover up his reports of SMU officers' deliberate indifference to his serious mental illness and violated his Eighth Amendment rights when they failed to take corrective action against the SMU officers. (Id. at 30-32).

Parran alleges that the SMU officers' deliberate indifference to his serious mental illness caused him to stop eating. (Id. at 34). On December 24, 2012, the DOC successfully obtained an emergency court order allowing them to administer a feeding tube and "force feed [him] due to immediate life threatening conditions to his physical health." (Id. at 35). On December 25, 2012, SMU officers, including defendant Leedom, allegedly removed him from the medical unit and returned him to the SMU even though he still had the feeding tube, and placed him in a cell covered with feces. (Id. at 37-38). He contends that he was deprived of soap, sheets, and a blanket and was "freezing, shaking and shivering and coughing up blood throughout the days and nights." (Id. at 39-40). He alleges this was part of a conspiracy among defendants Leedom, Lewis, Mihal, Taylor, Hibshmen, and Swartz to deprive him of his constitutional rights because of his "color, Religion, speech activities." (Id. at 38).

From December 25, 2012, through December 28, 2012, he alleges that, despite voicing complaints of coughing up blood to SMU officers and defendant Voorstad, he continued to be force-fed. (Id. at 41-44). He was taken to the hospital on the morning of December 29, 2012, and transported back to SCI-Camp Hill by day's end and placed back in the SMU. (Id. at 47-48). He alleges that defendants Gonzales, Hoerner, Lewis, Mihal, Hibshmen, Taylor, Francis and other SMU officers conspired to deprive him of his

constitutional rights when they placed him back in an unsanitary cell without any "sheets, blankets, etc." (Id. at 49-53).  He allegedly remained in the unsanitary cell from December 31, 2012 until January 4, 2013, which exacerbated his mental illness and caused him to experience depression, weight loss, hunger pains and internal bleeding.  (Id. at 53-57). Defendants Voorstad and Shoop continued the force feeding despite his complaints of spitting up blood.  (Id. at 56).  He was also allegedly contracted Hepatitis A and B.  (Id. at 57).

He further alleges that defendants Henry, Horner, Leggore, Meintel, S. Moore, K Moore, Whalen, Williams, Varner and Zwierzyna, were deliberately indifferent to his health and safety when, through the grievance procedure, they were made aware of the conduct of the other defendants and conspired to deny his appeals and failed to take corrective action. (Id. at 59-60).

### C.   Discussion

#### 1.   42 U.S.C. § 1981

The Commonwealth defendants first argue that Parran's 42 U.S.C. § 1983 claims of race discrimination are subject to dismissal.  The Court agrees.  The  42 U.S.C. § 1981 claim for damages advanced by Parran is foreclosed by McGovern v. City of Philadelphia, 554 F.3d 114 (3d Cir. 2009).  The McGovern Court concluded that "because Congress neither explicitly created a remedy against state actors under § 1981(c), nor expressed its intent to overrule [prior Supreme Court caselaw], we hold that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights

guaranteed in § 1981 by state governmental units.' " McGovern, 554 F.3d at 121 (citations omitted).  McGovern makes clear that Parran must rely upon § 1983 to pursue damages for any violation of rights secured under 42 U.S.C. § 1981.

   2. 42 U.S.C. §§ 1985 and 1986

  Section 1985 permits a private right of action for conspiracies which deprive an individual of their civil rights.  See 42 U.S.C. § 1985.  The elements of a § 1985(3) claim are "(1) a conspiracy of two or more persons; (2) motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of person to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or to the deprivation of any right or privilege of a citizen of the United States."  Brown v. Philip Morris Inc, 250 F.3d 789, 805 (3d Cir.2001));  42 U.S.C. § 1985(3).  A plaintiff must allege "facts that plausibly suggest a meeting of the minds," Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010), and the complaint must not plead merely a "conclusory allegation of agreement at some unidentified point."  Twombly, 550 U.S. at 557.

  The amended complaint is devoid of any factual detail regarding the formation of a conspiracy as to all of the defendants.  Parran relies solely on bald and conclusory statements that the defendants conspired to target him based on his speech, color and religion.  While he provides factual detail of certain acts taken by certain defendants, he does not allege with specificity that any parties entered into an actual agreement to violate his rights; he merely puts forth the conclusory legal statement that defendants entered into a conspiracy.  "Mere

8

conclusory allegations of deprivations of constitutional rights [citations omitted] are

insufficient to state a § 1985(3) claim." <u>D.R. v. Middle Bucks Area Vocational Tech.</u>

<u>School</u>, 972 F.2d 1364, 1377 (3d Cir.1992); <u>see also</u> <u>Robinson v. McCorkle,</u> 462 F.2d 111,

113 (3d Cir.1972) ("holding that '[w]ith near unanimity, the courts have rejected complaints

containing mere conclusory allegations of deprivations of constitutional rights protected

under § 1985(3).' "). Courts are free to ignore legal conclusions or factually unsupported

accusations which merely state that "the-defendant-unlawfully-harmed-me." <u>Iqbal</u>, 556 U.S.

at 678 (internal citation omitted). Parran's § 1985(3) conspiracy claim is subject to

dismissal.

Parran also seeks to impose liability under 42 U.S.C. § 1986. Liability under 42

U.S.C. § 1986 is predicated on knowledge of a violation of 42 U.S.C. § 1985. <u>See Clark v.</u>

<u>Clabaugh</u>, 20 F.3d 1290, 1295 (3d Cir.1994). Parran fails to allege any facts to support

liability under 42 U.S.C. § 1985. Consequently, his claim under 42 U.S.C. § 1986 must be

dismissed.

3.    <u>42 U.S.C. § 1983</u>

Section 1983 of Title 42 of the United States Code offers private citizens a cause of

action for violations of federal law by state officials. <u>See</u> 42 U.S.C. § 1983. The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d

1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the

violation of a right secured by the Constitution and laws of the United States, and must show

that the alleged deprivation was committed by a person acting under color of state law."

West v. Atkins, 487 U.S. 42, 48 (1988). Parran's Section 1983 claim is comprised of

allegations that defendants violated his First, Fourth, Fifth, Eighth, Fourteenth Amendments.

(Doc. 14, ¶¶ 61-65).

Individual liability will be imposed under Section 1983 only if the state actor played

an "affirmative part" in the alleged misconduct.  See Evancho v. Fisher, 423 F.3d 347, 353

(3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  In other

words, defendants in Section 1983 civil rights actions "must have personal involvement in

the alleged wrongs . . . shown through allegations of personal direction or of actual

knowledge and acquiescence."  Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode,

845 F.2d at 1207-08.  When a plaintiff merely hypothesizes that an individual defendant may

have had knowledge of or personal involvement in the deprivation of his or her rights,

individual liability will not follow.  Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

Parran seeks to impose liability on defendants Wetzel and Harry based solely on

their roles as supervisory officials.  Wetzel is named in his capacity as the Secretary of

the DOC and Harry is named based on her position as the Superintendent of SCI-

10

Camp Hill.  The allegations against these defendants are insufficient to establish personal involvement.  Plaintiff fails to set forth specific instances of constitutional misconduct and does not allege that these defendants knew of, and  acquiesced in, or played an affirmative part in, the alleged underlying unconstitutional conduct.  The complaint against these defendants is subject to dismissal.

Parran alleges that defendants Henry, Horner, Leggore, Meintel, S. Moore, K Moore, Whalen, Williams, Varner and Zwierzyna, were deliberately indifferent to his health and safety when, through the grievance procedure, they were made aware of the conduct of the other defendants and conspired to deny his appeals and failed to take corrective action.  (Doc. 14, ¶¶ 59-60).  A state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct.  See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement);  Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); see also Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (finding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corr, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

Hence, the claims lodged against defendants Henry, Horner, Leggore, Meintel, S. Moore, K

Moore, Whalen, Williams, Varner and Zwierzyna will be dismissed.

Discussion of the constitutional claims existing against remaining defendants Byrd,

Francis, Gonzales, Hibshmen, Hoerner, Huber, Little, Leedom, Lewis, R. Lewis, Mihal, Noll,

Reisinger, Shoop, Simms, Stern, Swartz, Taylor, and Voorstad follows.

a.     *First Amendment*

Parran alleges that defendants Byrd, Francis, Hibshmen, Huber, Leedom, Lewis, R.

Lewis, Mihal, Reisinger, Simms, Stern, and Swartz retaliated against him because he was

"speaking about his religion" in violation of his First Amendment rights.  While mindful that

the *pro se* plaintiff may not be held to a heightened burden of proof, the court should

approach prisoner claims of retaliation "with skepticism and particular care" due to the "near

inevitability" that prisoners will take exception with the decisions of prison officials and "the

ease with which claims of retaliation may be fabricated."  See Dawes v. Walker, 239 F.3d

489, 491 (2d Cir.2001); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Woods, 60

F.3d at 1166; Colon, 58 F.3d at 873; Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983).

The First Amendment offers protection for a wide variety of expressive activities.  See

U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison context,

where legitimate penological interests must be considered in assessing the constitutionality of

official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).  Retaliation for expressive

activities can infringe upon an individual's rights under the First Amendment.  See Allah v.

Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).  To prevail on a retaliation claim under 42

12

U.S.C. § 1983, plaintiff must demonstrate:  (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

With regard to the protected conduct prong, "[f]ree speech is not absolute at all times and under all circumstances."  Chaplinsky v. State of New Hampshire, 315 U.S. 568, 571-72 (1942).  "[T]ypes of speech that are categorically unprotected include: fighting words, Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), threats, Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), speech that imminently incites illegal activity, Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), and obscenity, Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)."  U.S. v. Stevens, No. 05-2497, 2008 WL 2779529 (3d Cir. July 18, 2008).  As a general rule, a prisoner's First Amendment rights are retained to the extent they are not inconsistent with his inmate status or with the legitimate penological objectives of the corrections system.  Pell v. Procunier, 417 U.S. 817, 822 (1974); see also  Jones v. North Carolina Dep't of Corr. 433 U.S. 119, 132 (1977) (holding that a prisoner's exercise of his First Amendment freedoms may be curtailed if such speech poses "the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment.").  Thus, an inmate's First Amendment rights do not include the right to debate staff orders prior to obeying them, disregard prison rules, or

13

engage in activities that may incite a disturbance. See, e.g., Durkin v. Taylor, 444 F. Supp. 879 (D.C.Va. 1977) (prisoner telling prison staff he was tired of "chicken shit" rules was not protected speech). There can be no question that Parran's utterances, "that every black person is a Muslim and that "we were rob [sic] of everything by white people, our culture, religion, etc. They hung us from trees, set us on fire, and that white people don't care for human life and that they all are devils," pose a likelihood of disruption to prison order or stability and thus, do not constitute constitutionally protected speech. (Doc. 14, ¶¶ 9- 10). The retaliation claim is therefore subject to dismissal as to all defendants.

b.  *Fourth Amendment*

Parran alleges that defendants Francis, Gonzales, Hibshmen, Huber, Little, Leedom, Lewis, Mihal, Swartz, Taylor, and Voorstad violated his Fourth Amendment rights "in leaving [him] in a freezing cold cell with no property or forcing tube in and out of his body or allowing it to continue dispite [sic] internal bleeding and or destroying his religion texts property or giving him Hepatitis A & B did violate his 4th Amendment right to privacy in his body and religion in violation of the 4th Amendment." (Doc. 14, p. 8). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. It is well-settled that Fourth Amendment rights are "significantly diminished" in custodial settings and apply only in the context of a search and seizure.

14

Hudson v. Palmer, 468 U.S. 517, 525-28 (1984).  Because Parran was not subjected to a

search or seizure, his Fourth Amendment claim is not cognizable and is subject to dismissal.[2]

### c.     Fifth Amendment

Parran also alleges that in "putting and leaving [him] in a feces written [sic] cell,

without property, or keeping him in freezing cold cell without any property or slamming his

hand in food slot or falsifying report against him, or finding him guilty without any evidence

against him . . .  or denying his appeals or failing to correct wrongs, or denying him needed

medical treatment, or intentionally starving him or destroying his religious texts, did punish

[him] without due process of law which constitutes a 5th Amendment violation . . . "  The due

process clause of the Fifth Amendment "only protects against federal governmental action

and does not limit the actions of state officials."  Caldwell v. Beard, 324 F.App'x. 186, 189

(3d Cir. 2011) (citing Riley v. Camp, 130 F.3d 958, 972 n. 19 (11th Cir. 1997)); see also

Nguyen v. United States Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983) ("The

limitations of the fifth amendment restrict only federal governmental action  . . . ") (citing

Public Utils. Comm'n v. Pollak, 343 U.S. 451, 461 (1952))).  There is no dispute as to the

defendants' status as non-federal officials.  Consequently, plaintiff's Fifth Amendment claim

is without merit and subject to dismissal.

### d.     Eighth Amendment

---

[2]He fares no better in attempting to seek to impose liability based on the "privacy in his body," as this Fourth Amendment body of law also presupposes an unreasonable search of a person, such as a strip search.  See Allison v. GEO Group, Inc., 611 F. Supp.2d 433, 443, 446 (E.D. Pa. 2009) (citing Hudson v. Palmer, 468 U.S. 517, 525-28 (1984); Bell v. Wolfish, 441 U.S. 520, 557 (1979)).

15

Parran alleges that his Eighth Amendment rights were violated when he was subjected to unconstitutional conditions of confinement and was denied adequate medical treatment by defendants Byrd, Francis, Hibshmen, Huber, Horner, Leedom, Lewis, Mihal, Shoop, Stern, Swartz, Taylor and Voorstad.

### i.    Conditions of Confinement

Parran alleges that he was placed in a feces-ridden freezing cell without "sheets, blankets, toilet paper, soap, or anything, etc." (Doc. 14, ¶¶ 25, 26, 39, 51). The Eighth Amendment protects prison inmates from cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. Id. However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Hudson v. McMillian, 503 U.S. 1, 8–9 (1992). Mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment. Estelle v.

<u>Gamble</u>, 429 U.S. 97, 105–06 (1976).

Based on the allegations set forth *supra*, it is clear that Parran sets forth facts sufficient to state an Eighth Amendment conditions of confinement claim against defendants Francis, Hibshmen, Hoerner, Huber, Leedom, Lewis, Little, Mihal, Stern, Swartz, and Taylor.  (Doc. 14, ¶¶ 26, 30, 39-39, 40, 44, 45, 50, 51-54, 57).  The motion will be denied in this regard.

### ii.    Deliberate Indifference to Medical Needs

Parran also alleges that defendants Byrd, Hibshmen, Hoerner, Leedom, Lewis, Little Mihal, Shoop, Swartz, Taylor, and Voorstad were deliberately indifferent to his serious medical needs.  (Doc. 14, ¶¶ 41-44, 45, 49, 51, 53, 54, 56, 57).  There is no doubt that the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle</u>, 429 U.S. at 103–105.  In order to set forth a cognizable claim, plaintiff must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  <u>Estelle</u>, 429 U.S. at 104; <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir.1 999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  <u>Farmer</u>, 511 U.S. at 837.  A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care."  <u>Estelle</u>, 429 U.S. at 104–05.

Based on the allegations of the complaint, it is clear that Parran states an Eighth Amendment denial of medical care claim against defendants Byrd, Hibshmen, Hoerner,

Leedom, Lewis, Little, Mihal, Shoop, Swartz, Taylor, and Voorstad.[3] (Doc. 14, ¶¶ 41, 43, 44, 45, 49, 51, 53, 54, 56, 57).

*e.* *Fourteenth Amendment*

Parran generally alleges that defendants "in starving [him] or keeping him in feces written [sic] cell or freezing cell without any property or denying his appeals or sentence him to 90 days D.C. time without any evidence or falsifying reports against him, or slamming his hand in food slot, or keeping him in the SMU or allowing him to stay therein or force feeding him dispite [sic] his internal bleeding, or allowing it to continue or denying him needed medical treatment did punish him without due process of law and or case and denied him equal protection of the law in violation of the 14th Amendment. . . ."[4] (Doc. 14, pp. 8-9).

i.     Due Process

To the extent that Parran brings a due process claim against defendants R. Lewis and

---

[3]The Court would be remiss if it did not express concern regarding the procedural irregularities of the Commonwealth defendants' motion to dismiss. The Eighth Amendment argument in defendants' brief is replete with references to "the facts," "as established by the facts," "medical records," and "not supported by the facts." (Doc. 47, pp. 22-26). The brief contains numerous citations to the summary judgment record filed in this matter by defendant Voorstad and heavily relies on facts extracted from that record. (Id.) Clearly, reliance on anything outside the four corners of the complaint on a Rule 12(b)(6) motion would require that the motion be converted to one for summary judgment. FED. R. CIV. P. 12(d) (stating "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.") Because the Commonwealth defendants are citing to a record filed by private counsel, on behalf of a defendant they do not represent, and in light of the fact that they have taken no steps to file their own properly supported motion for summary judgment, the court declines to convert the motion.

[4]The cell conditions to which he was allegedly exposed, and the alleged denial of medical treatment, are appropriately considered Eighth Amendment claims and have been addressed in that context, *supra.*

Reisinger based on disciplinary hearing proceedings, the claim fails as a matter of law.  The

Fourteenth Amendment of the United States Constitution provides in pertinent part that "No

State shall . . . deprive any person of life, liberty, or property, without due process of law. . .

."  Due process protections attach in prison disciplinary proceedings in which the loss of

good-time credits is at stake.  <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 564–65 (1974).  In

<u>Wolff</u>, the Supreme Court held that an inmate must receive "(1) advance written notice of the

disciplinary charges; (2) an opportunity, when consistent with institutional safety and

correctional goals, to call witnesses and present documentary evidence in his defense; and (3)

a written statement by the factfinder of the evidence relied on and the reasons for the

disciplinary action." <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985).  Because Parran did

not suffer a loss of good conduct time, the <u>Wolff</u> protections are inapplicable.

Moreover, the Due Process Clause does not provide protection against the imposition

of discipline, including disciplinary confinement and the loss of various privileges inasmuch

as these other forms of discipline do not "impose[ ] atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." <u>Torres v. Fauver</u>, 292 F.3d 141,

150–51 (3d Cir. 2002) (citing <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995)).  Confinement in

administrative or punitive segregation is insufficient, without more, to establish the kind of

"atypical" deprivation of prison life necessary to implicate a liberty interest.  <u>Sandin</u>, 515

U.S. at 486; <u>see</u> <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-07 (3d Cir. 1997).  Because plaintiff's

ninety days of disciplinary confinement did not impose an atypical and significant hardship

on him in relation to the ordinary incidents of prison life, his due process claim arising out of

disciplinary proceedings is subject to dismissal.

His claim that defendant Byrd violated his due process rights by filing of a false misconduct charge is also subject to dismissal. The filing of a false misconduct report does not violate an inmate's due process rights. A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986).

Parran alleges that he was deprived of his inmate property by defendants when he was placed in the SMU. Deprivation of inmate property by prison officials does not give rise to cognizable due process claim if the prisoner has an adequate post-deprivation state remedy. Hudson v. Palmer, 468 U.S. at 533. Adequate remedies were available in both the form of the administrative grievance procedure and, if dissatisfied, an adequate post-deprivation remedy in state tort law. See Daniels v. Williams, 474 U.S. 327, 328 (1986) (finding that negligent acts of officials causing unintentional losses of property do not implicate due process); Hudson v. Palmer, 468 U.S. at 533 (stating intentional deprivations of property do not violate due process if a meaningful post-deprivation remedy for the loss is available); see also 42 PA. CONS.STAT. ANN. § 8522(a), (b)(3) (common law action for conversion); Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

ii.      Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be "treated alike" by state actors. See City of Cleburne v. Cleburne

20

Living Ctr., 473 U.S. 432 (1985). To state an equal protection claim, Parran must allege (1) that he is a protected class member and (2) that he was treated differently from similarly situated persons outside his protected class.  See Tillman, 221 F.3d at 423–24; Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).  "Protected classes include those based upon suspect distinctions, such as race, religion, and alienage, and those impacting fundamental rights." Trefelner ex rel. Trefelner v. Burrell Sch. Dist., 655 F. Supp.2d 581, 589 (W.D.Pa.2009).  "To support a claim for violations of equal protection rights, '[a] plaintiff must at least allege and identify the actual existence of similarly situated persons who have been treated differently and that the government has singled out plaintiff alone for different treatment.' "  See White v. Sch. Dist. of Phila., CIV.A. 05–0092,  2008 WL 2502137 (E.D.Pa. June 19, 2008), aff'd, 326 F.App'x. 102 (3d Cir. 2009) (citations omitted).

Because Parran has not identified any similarly situated individual whom prison officials treated differently, the equal protection claim will be dismissed as to all defendants.

**D.     Conclusion**

Based on the foregoing, the Commonwealth defendants' motion (Doc. 30) to dismiss will granted with respect to the Parran's 42 U.S.C. §§ 1981, 1985, and 1986 claims.  With regard to the 42 U.S.C. § 1983 claim, the motion will be granted as to the First, Fourth, Fifth and Fourteenth Amendments.  The motion will be denied as to the Eighth Amendment condition of confinement claim against defendants Francis, Hibshmen, Hoerner, Huber, Leedom, Lewis, Mihal, Stern, Swartz, and Taylor.  The motion will also be denied with respect to the Eighth Amendment denial of adequate medical treatment claim against

defendants Byrd, Hibshmen, Hoerner, Leedom, Lewis, Mihal, Swartz, and Taylor.  The

remaining Eighth Amendment claims will be consolidated into pending civil action <u>Parran v.</u>

<u>Voorstead</u>, 3:13-cv-0275.  With respect to defendants "Little" or "Littles" and "Gonzales,"

Parran will be directed to provide the Court with additional information for purposes of

service on these defendants.

  Voorstad's motion (Doc. 42) to dismiss will be granted with respect to the Fourth and

Fourteenth Amendment claims.  The motion will be denied with respect to the Eighth

Amendment adequate medical care claim.  However, Voorstad's alternative motion (Doc. 42)

for summary judgment motion on the Eighth Amendment claim will be addressed below.

## II.  <u>Motion for Summary Judgment</u>

### A.  **Standard of Review**

  Through summary adjudication the court may dispose of those claims that do not

present a "genuine issue as to any material fact" and for which a jury trial would be an empty

and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  The burden of proof is upon the

non-moving party to come forth with "affirmative evidence, beyond the allegations of the

pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311,

315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

322-23 (1986).  "'The non-moving party may not simply sit back and rest on the allegations

in the complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by

the depositions, answers to interrogatories, and admissions on file, and designate specific

facts showing that there is a genuine issue for trial.'  <u>Celotex [ ]</u>, 477 U.S. [ ] 324 [ ] (1986)

(internal quotations omitted)." Schiazza v. Zoning Hearing Bd., Fairview Twp., York County, Pa, 168 F. Supp. 2d 361, 365 (M.D. Pa. 2001). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

### B.    Statement of Material Facts

"A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." See L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. Id. "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id. On September 30, 2015, an Order (Doc. 60) entered affording Parran until October 15, 2015, to file a statement of material facts responding to defendant's statement. He was cautioned that his failure to file a statement would result in the facts set forth in defendant's statement being deemed admitted. (Id.) Parran failed to oppose defendant's statement of material facts; all facts contained therein are deemed admitted.

Parran initiated a hunger strike and refusal of medical services on December 10, 2012, purportedly after receiving a misconduct report. (Doc, 43, ¶ 6). On December 13, 2012, the

E-Block officer notified medical that Parran refused breakfast and lunch.  (Id. at 4).  In response, a registered nurse met with Parran and prepared a Hunger Strike and Refusal of Treatment Notification.  (Id. at 5).  PARRAN is reported as stating, "I'm not eating, I'm not eating." And signed "The Effects of Starvation and Dehydration," acknowledging the potential consequences of his refusal to eat.  (Id.)  Hunger strike protocol was implemented and appropriate prison and medical staff were notified.  (Id. at 7).  In a meeting with defendant Voorstad, Parran reported that he was on a hunger strike because he was depressed and indicated that he intended to continue to not eat or drink.  (Id. at 9).  Although Parran displayed no immediate medical consequences at this time, defendant Voorstad explained that if he did not resume eating soon, the prison would seek a court order for involuntary feeding.  (Id.)  Parran informed Voorstad that he was refusing all medical treatment.  (Id.) Although he also denied psychiatric treatment, Voorstad advised him that the psychiatry department would continue daily psychiatric evaluations during his hunger strike.  (Id.)  He was seen by a psychiatrist later that day.  (Id. at 6).

Over the course of the next ten days, despite Parran's refusal to eat and to receive medical treatment, he was vigorously and thoroughly monitored and treated by defendant Voorstad and other medical and psychiatry personnel.  (Id. at 8-50).

On December 24, 2012, the Pennsylvania Department of Corrections filed a complaint and motion for a preliminary injunction, alleging that due to Parran's hunger strike and refusal of medical treatment, he would suffer "immediate, severe, and irreparable harm possibly resulting in death if necessary, involuntary medical treatment, including nutrition,

hydration and medication, are not administered." (Id. at 51).  An emergency hearing was held that afternoon and the motion for a preliminary injunction was granted allowing for the use of involuntary medical treatment and/or intervention.  (Id.)  Upon being notified of the court order, defendant Voorstad arranged a treatment protocol requiring Parran to be fed *via* a nasogastric tube ("NG tube") two times per day.  (Id. at 53, 58).  Voorstad completed a Health Therapeutic Diet Order Form placing Parran on a puree diet until January 25, 2013, and ordered bloodwork.  (Id. at 53-54).

The NG tube feeding commenced on the evening of December 24, 2012, and was closely monitored by defendant Voorstad and other medical and psychiatry personnel throughout the relevant time period.  (Id. at 59-113).  Even though the NG tube feeding regimen was not without complications, each time an issue arose, it was addressed.  (Id. at 59, 73, 77, 78, 82-85, 95, 108, 109).

## C.   Discussion

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer, 511 U.S. at 837).  Deliberate indifference has been found where a prison official:  "(1) knows of a prisoner's need for medical treatment but intentionally

refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197.  Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).  Allegations of negligent treatment or medical malpractice do not trigger constitutional protections.  Estelle, 429 U.S. at 105–06.

It is well-settled that no claim of deliberate indifference is made out where a significant level of care has been provided, and all that is shown is that the prisoner disagrees with the professional judgment of a physician, or that a different physician has, in the past, taken a different approach to the prisoner's treatment.  Estelle, 429 U.S. at 105–06, 107 (finding that "in the medical context, . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); Parham v. Johnson, 126 F.3d 454, 458 n. 7 (3d Cir. 1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference' "); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (same); United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n. 2 (3d Cir.1979) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir.1976)) (stating that " '[w]here a prisoner has received some medical

26

attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law'." See also Taylor v. Norris, 36 F. App'x. 228, 229 (8th Cir. 2002) (finding that deliberate indifference claim failed because it involved a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); AbdulWadood v. Nathan, 91 F.3d 1023, 1024–35 (7th Cir. 1996) (holding that an inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir. 1994) (concluding that inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir. 1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim).

Viewing the evidence in the light most favorable to Parran, defendant Voorstad has met his burden of showing the absence of a genuine issue as to any material fact on the issue of deliberate indifference to Parran's serious medical needs. The record is devoid of any facts that would indicate that defendant Voorstad delayed or denied medical treatment. Rather, the record clearly demonstrates that defendant Voorstad consistently provided prompt and adequate treatment to Parran throughout the entire time period at issue.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams

v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Parran has wholly failed to

oppose the motion.  See Celotex, 477 U.S. at 323.  Consequently, defendant Voorstad is

entitled to an entry of summary judgment.

**D.**    **Conclusion**

Based on the foregoing, defendant Voorstad's motion (Doc. 42) for summary

judgment will be deemed unopposed and granted as to the Eighth Amendment claim.

An appropriate order will enter.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:   March 23 2016